UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:06CV-54-R

TODD CHILDRESS, et al.                                                                PLAINTIFFS

v.

KENTUCKY OAKS MALL COMPANY, et al.                                    DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiffs' Motion to Exclude the Testimony of Defendant Security Expert, Ralph Witherspoon (Docket #37). Defendants, Kentucky Oaks Malls Company and National Security Consultants, Inc., have responded to this motion (Docket #43). This matter is now ripe for adjudication. For the following reasons, the Plaintiffs' Motion to Exclude is **DENIED**.

**BACKGROUND**

This case arises from a fatal assault on the Plaintiffs' son, Michael Childress ("Childress"), at 7:00 p.m. on June 17, 2004, in the parking lot of the Kentucky Oaks Mall (the "Mall") in Paducah, Kentucky. The eighteen-year old Childress was stabbed by Chad Williams ("Williams") during an altercation between the young men and several friends. Williams is currently incarcerated. This lawsuit was filed by Todd and Janna Childress, Childress's parents, individually and as administrators of Childress's estate, against both Kentucky Oaks Mall Company and National Security Consultants, Inc., under the theory that the Defendants wrongfully caused Childress's death. National Security Consultants, Inc. provided security services for the Mall on June 17, 2004.

The Plaintiffs seek to exclude the testimony of the Defendants' expert witness, Ralph Witherspoon ("Witherspoon"), alleging that Witherspoon's testimony does not meet the standards of FED. R. EVID. 702. The Defendants have submitted their Rule 26(a)(1) Expert Disclosure, attaching Witherspoon's Preliminary Analysis and Report (Docket #30). The Defendants seek to proffer Witherspoon's opinions as to the foreseeability to the Defendants of Childress's death and the effectiveness of the security program operated by the Defendants at the Mall.

## STANDARD

The admissibility of expert witness testimony is governed by FED. R. EVID. 104(a) and 702, applied under the rubric established in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). The Rules require that the Court ensure that any and all expert testimony or evidence "is not only relevant, but reliable." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001) (quoting *Daubert*, 509 U.S. at 589). The Court must determine[1] whether the expert

> is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Nelson*, 243 F.3d at 251 (quoting *Daubert*, 509 U.S. at 592-93). Testimony is "scientific" when "an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice in the relevant field." *Kumho Tire*, 526 U.S. at 152. The proposed testimony must be relevant, in that there

---

[1] A "district court is not required to hold an actual hearing" to make this determination. *Nelson*, 243 F.3d at 249.

must be a "valid . . . connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 149 (quoting *Daubert*, 509 U.S. at 592). In other words, there must be a "fit" between the proposed testimony and the question(s) presented by the case at bar. *Daubert*, 509 U.S. at 591.

*Daubert* outlined four factors under which to evaluate proffered expert testimony to ensure its reliability: "testing, peer review and publication, potential rate of error, and general acceptance in the relevant community." *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000). However, these factors are "neither definitive, nor exhaustive, and may or may not be pertinent to the assessment in any particular case." *Nelson*, 243 F.3d at 251. The Court "must consider whether the factors are reasonable measures of reliability in a given case" before evaluating proffered expert testimony. *Id.* (citing *Kumho Tire*, 526 U.S. at 152). The proponent of the testimony "must establish its admissibility by a preponderance of proof." *Id.*

FED. R. EVID. 702 was recently amended to comport with *Daubert* by including the following language: "if (1) the testimony is based upon sufficient facts and data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The Advisory Committee Notes to this amendment "explain that no specific factors were articulated in the new rule because the factors mentioned in *Daubert* are neither exclusive, nor dispositive, and do not apply to every type of expert testimony." *Nelson*, 243 F.3d at 250 n.4. The Advisory Committee Notes do offer the following five factors as "relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact":

> (1) Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying;

3

>       (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;
>       (3) Whether the expert has adequately accounted for alternative explanations;
>       (4) Whether the expert is being careful as he would be in his regular professional work outside his paid litigation consulting; and
>       (5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

*See* Advisory Committee Notes, FED. R. EVID. 702 (2000 Amendments) (citations omitted). The Notes echo the requirement of flexibility outlined in *Kumho Tire*,[2] and indicate that "other factors may also be relevant" and "no single factor is necessarily dispositive of the reliability of a particular expert's testimony." Finally, the fact that the Court finds a particular expert is offering reliable testimony "does not necessarily mean that contradictory expert testimony is unreliable." FED. R. EVID. 702 Advisory Committee Notes. It is ultimately for the jury to decide, based on expert testimony the Court finds to be reliable (as well as lay testimony), which version of events is "correct." *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994) ("[T]he evidentiary requirement of reliability is lower than the merits standard of correctness."); *Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").

## DISCUSSION

Not all types of expert testimony may be evaluated on the *Daubert* factors of testing, peer review and publication, potential rate of error, and general acceptance in the relevant community, because certain types of expert testimony do not rely on any scientific method. The

---

[2] "[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular testimony is reliable." *Kumho Tire*, 526 U.S. at 152.

testimony of a premises security expert is of that variety.  Here, Witherspoon's testimony contains no conclusions drawn from verifiable scientific testing.  When expert testimony is non-scientific, "experience alone-or experience in conjunction with other knowledge, skill, training, or education" may be sufficient to qualify an expert.  FED. R. EVID. 702 Advisory Committee Notes.  When a witness relies primarily on his or her experience, the "witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *Id.*

In other cases alleging inadequate premises security, courts have found that the specialized knowledge of a security expert may be based on practical experience, academic training, and credentials, as long as the expert "possesses specialized knowledge beyond the average layman in the area of security for commercial properties." *Starnes v. Sears Roebuck & Co.*, 2005 U.S. Dist. LEXIS 35755, at *8-9 (D. Tenn. 2005) (finding that a man with 30 years experience with the United States Secret Service, who was also the president of a security consulting and investigative firm, preliminarily qualified as an expert in a case alleging inadequate security in a mall parking lot) (quoting *Bethea v. Bristol Lodge Corp.*, 2003 U.S. Dist. LEXIS 9011, at *7-8 (D. Pa. 2003) (finding that a graduate of the FBI National Academy, who had served as a patrolman and captain of the Philadelphia Police Department, director of public safety for a township, and President of a security investigations company, with extensive experience as a consultant on premises security, preliminarily qualified as an expert in a case alleging inadequate security at a topless club)).

However, the Plaintiffs here do not allege that Witherspoon is not qualified to provide expert testimony.  Instead, the Plaintiffs claim that Witherspoon's testimony is unreliable

5

because the methodology he has employed is unreliable. In both *Starnes v. Sears Roebuck & Co.* and *Bethea v. Bristol Lodge Corp*, the proffered experts were preliminarily qualified as such by the court. *Starnes*, 2005 U.S. Dist. LEXIS 35755, at *10; *Bethea*, 2003 U.S. Dist. LEXIS 9011, at *12. However, both courts excluded the experts' testimony because neither expert offered a basis, other than experience, for his opinions. In a case such as this one, where there is no need for rigorous testing of methodology or peer review, "the expert must still provide a methodology that can be proven to be reliable." *Starnes*, 2005 U.S. Dist. LEXIS 35755, at *12, (quoting *Bethea*, 2003 U.S. Dist. LEXIS 9011, at *7). In addition to a reliable methodology, the expert must provide support for his opinions. *Id*. at *13. "The Court's gatekeeping function under *Daubert* requires more than simply taking expert's word for it." *Id.* (quoting FED. R. EVID. 702 Advisory Committee Notes).

In *Bethea*, the proffered expert reached his opinion by reviewing deposition testimony, reports of various witnesses, and photographs and diagrams of the scene. *Bethea*, 2003 U.S. Dist. LEXIS 9011, at *19. However, the Court excluded his testimony because he did not explain the means by which he reached his conclusions. *Id* at *20. He did not cite an industry standard, discuss was what custom in the industry, or provide "any explanation that could be tested or subject to peer review as to how" he reached his opinions. *Id*. at *20-21.

In *Starnes*, the proffered expert "visited the site of the incident...reviewed mall incident reports, depositions, [the] daily activity safety report of the incident date, the security company's employee handbook," and the police department's "incident and crime analysis reports." *Starnes*, 2005 U.S. Dist. LEXIS 35755, at *6-7. The Court excluded his testimony, however, because he did not offer any" basis, other than experience, for his opinions." *Id.* at 11-12. The

Court cited *Bethea*, adopting that court's demand for some type of support in the form of a reliable methodology and/or industry standard. *Id*. at 12-13.

Defendants' proffered expert in this case, Witherspoon, reviewed documents and took steps substantially similar to those reviewed and taken by the proffered experts in *Starnes* and *Bethea*. However, unlike the experts in those cases, Witherspoon undertook his examination of the case based on a methodology used for retrospectively assessing premises security litigation cases, which was developed by professionals in the security industry. Witherspoon has explained the means by which he reached his conclusions and provided a basis for his conclusions. Therefore, his testimony is not subject to the fatal flaw that led to the exclusion of the proffered testimony in *Starnes* and *Bethea*.

Nevertheless, the Plaintiffs attack Witherspoon's testimony on three fronts. First, they claim that Witherspoon employed a methodology in this case that is different than the one he would use in practice, rendering his opinion unreliable. Second, the Plaintiffs allege that Witherspoon used a less accepted, and therefore unreliable, methodology. Finally, the Plaintiffs claim that Witherspoon's conclusions are based on "inexact and varying factors," rendering his opinions unreliable. The Court will address each of the Plaintiffs' arguments against the admission of Witherspoon's expert testimony in turn.

**I. Plaintiffs' challenge to Witherspoon's use of a "different methodology"**

The Plaintiffs claim that Witherspoon's testimony is inadmissible because he conducted a forensic review in preparing his expert report, utilizing a different methodology than if he had performed a practical security assessment, which renders his opinions unreliable. This challenge fails for two reasons.

First, there is no evidence in the record to support the Plaintiffs' claim. In both Witherspoon's Preliminary Analysis and Report, dated May 29, 2007, and his deposition testimony, he stated that the methodology he employed in analyzing the case is the *International Association of Professional Security Consultants* (IASPC) *Forensic Methodology* ("*Forensic Methodology*"). This is the method he employs when he is conducting a retrospective forensic review, such as he here. Witherspoon's preliminary expert report indicates that this is the same general method he uses in conducting prospective security surveys and assessments for clients. As the Court discussed above, a security expert like Witherspoon does not conduct scientific tests, that require rigid adherence to form and substance each time they are performed, in reaching his conclusions. Instead, Witherspoon utilizes the flexible *Forensic Methodology* and adapts the method to each situation with which he is confronted. Therefore, it is plain that Witherspoon did not use a methodology in this case that differs from his practical security assessment methodology.

Second, the Plaintiffs offer no legal support for their claim that Witherspoon's opinion is unreliable because his methodology differs according to whether he is analyzing a case retrospectively or prospectively. It is logical that a security consultant may consider different factors when analyzing the security risk present at the time of an incident that has already occurred than when prospectively analyzing a situation for possible security risks that may arise in the future. Witherspoon was retained by the Defendants to conduct a retrospective evaluation of the security situation at the Mall on the date of Childress's death. In contrast, a prospective evaluation takes into account all issues and/or events that could possibly arise or take place at some point in time. The Plaintiffs seem to be arguing that Witherspoon should have conducted a

prospective assessment. Such an assessment would useless to the jury.

*Grisham v. Wal-Mart Store, Inc.*, 929 F.Supp 1054 (E.D. Ky. 1995), a premises security case involving a shooting in the parking lot of a Wal-Mart Store in Florence, Kentucky, in December of 1992, provides support for this position. The court in *Grisham* specifically refused to consider certain statistics provided by one of the plaintiffs' experts because the plaintiffs "failed to demonstrate that any of the acts occurred prior to the assault" on the plaintiff. *Grisham*, 929 F.Supp. at 1058. A case involving an allegation of inadequate premises security necessarily turns on whether the incident was reasonably foreseeable to the defendant. *Id*. at 1056-57. If the incident was reasonably foreseeable, the defendant may be held liable for breaching a duty owed to the plaintiff. *Id.* The expert in *Grisham* provided statistics about assaults in the area, but because he did not establish that the assaults occurred *prior* to the date of the incident, they were not "relevant to the issue of foreseeability." *Id*. at 1058. In a case like the one at hand, speculation of possible future crimes or evidence of actual crimes committed after the date in question is entirely irrelevant. It is the time frame leading up to the incident that matters.

Therefore, the Court finds that the Plaintiffs' claim that Witherspoon's opinion is unreliable because he employed a methodology in this case that is different than the one he would use in practice must fail.

**II. Plaintiffs' challenge to Witherspoon's use of IAPSC methodology**

The Plaintiffs also challenge Witherspoon's testimony as unreliable because of his use of the IAPSC methodology, as opposed to that of the American Society of Industrial Security (ASIS). The Plaintiffs claim that because ASIS is larger, with 35,000 members as opposed to the

9

113 members of IAPSC, its guidelines are subject to more peer review and are therefore more reliable. In addition, the Plaintiffs claim the ASIS guidelines are more reliable because they do not differentiate between a practical security assessment methodology and a forensic methodology. However, the Plaintiffs offer no legal or evidentiary support for this proposition.

The Defendants submit that FED. R. EVID. 702 permits the admission of testimony that is the product of competing principles or methods in the same field of expertise, when both methods are accepted in the field and reach reliable results, citing *Heller v. Shaw Industries*, 167 F.3d 146, 160 (3d. Cir. 1999) for this position. However, the Court does not need to reach a conclusion on this point. As discussed above, a prospective security assessment is irrelevant in this case. Therefore, it isn't necessary that the experts in this case employ a methodology that does not differentiate between a practical security assessment and a retrospective forensic review. Instead, as discussed below, the IAPSC has developed a methodology meant to be employed by security professionals retained as forensic consultants or expert witnesses in premises security liability cases. The IAPSC methodology is tailored to the type of situation at hand. Its specificity actually tends to make the methodology more reliable. This type of retrospective forensic methodology is precisely the type of support the *Starnes* and *Bethea* courts demanded for the expert opinions presented there.

Background information on Witherspoon's qualifications and the IAPSC is helpful to understanding why this Court will accept Witherspoon's use of the *Forensic Methodology*. To begin, Witherspoon belongs to and is certified by both IAPSC and ASIS. He has been a member of ASIS since 1980, and has been re-certified as a Certified Protection Professional by ASIS every three years since 1985. He has also been a member of IAPSC since 1992, and has been

designated as a Certified Security Consultant by that organization through 2010. Since 1991, Witherspoon has been the President of Witherspoon & Company, providing management and liability consulting services on security loss prevention issues to businesses, organizations, and government agencies as well as consulting and providing expert witness services for firms handling litigation alleging negligent or inadequate security. Witherspoon has been retained in over 200 such cases since 1992, and has been qualified to testify as an expert on various security issues in both state and federal courts. Given this, Witherspoon is familiar with both ASIS and IAPSC and the type of guidelines both organizations have created.

      The Plaintiffs claim that because the membership of ASIS is much larger, its guidelines must be superior. However, the membership of IAPSC is intentionally much smaller than the membership of ASIS. The IAPSC limits its membership to truly independent security practitioners who meet its minimum educational, training, and experience criteria, and who pass a background investigation. The IAPSC's exacting criteria act to curtail its membership. The Plaintiffs have not provided any evidence to support their argument that the larger membership of ASIS is somehow more qualified to render expert opinions or produce an accepted methodology than the members of IAPSC. Indeed, as Witherspoon belongs to both, it is possible that the membership may overlap. The membership of the IAPSC is not smaller because the organization is somehow "worse" or more "unreliable" than ASIS.

      Further, beyond simply employing the *Forensic Methodology* in formulating his opinions in this case, Witherspoon appears to have an intimate knowledge of its workings. From 1999-2000, Witherspoon was Co-Chair of the IAPSC Best Practices Committee, which developed the *Forensic Methodology* specifically for the use of its members called upon to serve as forensic

consultants or expert witnesses in premises security cases. After creating a draft of the methodology over a period of five or six months, the Committee provided the draft to the entire IAPSC for comment and input. The draft was then sent to a dozen well known security consultants, who were not members of the IAPSC, for comments and suggestions, before being adopted by the IAPSC board of directors. The methodology was published in June 2000. By all indications, the IAPSC *Forensic Methodology* has been subject to peer review and accepted by security industry professionals. It is the product of a consensus reached by security practitioners who are at the top of their field.

Thus, unlike the experts in *Bethea* and *Starnes*, Witherspoon has explained the means by which he reached his conclusions, cited an industry standard and offered a basis, other than experience, for his opinions. *See Starnes*, 2005 U.S. Dist. LEXIS 35755, at *11-13; *Bethea*, 2003 U.S. Dist. LEXIS 9011, at *20-21. At best, the Plaintiffs' objections go to the weight of the testimony, not its admissibility. For these reasons, the Court finds that the IAPSC *Forensic Methodology* is reliable, and its use is relevant to the case at hand. Therefore, the Plaintiff's argument that Witherspoon's use of the IAPSC methodology renders his opinions unreliable must fail.

### III. Plaintiffs' challenge to Witherspoon's opinion that attack was unforeseeable

Finally, the Plaintiffs challenge as unreliable Witherspoon's ultimate opinion that the assault on Childress by Chad Williams was not reasonably foreseeable. The Plaintiffs claim that Witherspoon's opinion is based on "inexact and varying factors" and "conclusions that he is unqualified to make." The Plaintiffs do not state what "inexact and varying factors" they are challenging nor do they provide any legal support for their argument.

Instead, it appears that Witherspoon reviewed all of the materials recommended by the IAPSC methodology and applied that material to its framework, using the knowledge he has gained through his extensive experience in the field.  As Witherspoon followed this accepted, reliable, and relevant methodology and reviewed all of the documents available to him, Witherspoon's opinion cannot be based on "inexact and varying factors."  The IAPSC methodology instructs practitioners to review and analyze the same documents used by the proffered experts in *Starnes* and *Bethea*, albeit in a more extensive manner.  Neither the *Starnes* court nor the *Bethea* court took any issue with the types of materials the experts reviewed in reaching their conclusions.  *Starnes*, 2005 U.S. Dist. LEXIS 35755, at *6-12; *Bethea*, 2003 U.S. Dist. LEXIS 9011, at *19-20.  Instead, both courts rejected the experts' testimony because those materials were not applied it to a reliable methodology, culminating in an opinion.  *Id.* at *11-12; *id.*

The IAPSC methodology recommends first reviewing all relevant discovery materials.  Witherspoon reviewed all of the relevant materials that had been filed with this Court as of the date of his report, including the Complaint and the parties' responses to interrogatories.  Witherspoon also consulted the Report of the Plaintiffs' proffered expert Dwayne Tatalovich and analyzed his conclusions.

Second, the methodology instructs practitioners to review police documents and identify prior similar crimes occurring at the location.  Witherspoon identified relevant prior crimes as those involving violence because this case involves the stabbing death.  He then analyzed a log of the calls for service made to the Paducah Police Department for violent events at the Mall, covering the approximately two and a half year time period from January 1, 2002, through June

13

23, 2004. This is the time frame that Witherspoon typically examines in such a case. Witherspoon also examined the Paducah Police Department's investigative reports regarding Childress's murder.

Third, the methodology instructs practitioners to inspect the site where the incident occurred and the surrounding area. On May 22, 2007, Witherspoon visited the Mall during daylight hours, walking the interior and exterior portions of the Mall. He also drove around the exterior and surrounding areas.

Further, the methodology instructs practitioners to conduct a security survey of the incident. Witherspoon reviewed the security program established between Kentucky Oaks Mall Company and National Security Consultants for each of the malls the work with together. He also reviewed the specific procedures for the Mall in place on the date of the incident, as set forth in the NSC *Security Personnel Manual*. Witherspoon also compared the National Fire Protection Association Standard 730, *Guide for Premises Security* to the Defendants' security program in place at the time of the incident  This Guide was published and certified by the American National Standards Institute (ANSI) after the incident, but Witherspoon found that the security program in force at the Mall on Thursday, June 17, 2004, met the relevant current national standards set forth in Standard 730.

Given that Witherspoon reviewed all of the materials recommended by the IAPSC methodology and applied that material to the framework recommended by the methodology, using the knowledge he has gained through his extensive experience in the field, the Court finds that Witherspoon's opinions are not based on "inexact or varying factors." For this reason, the Plaintiffs' final argument, that Witherspoon's opinion is based on "inexact or varying factors,"

14

must fail.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion to Exclude Ralph Witherspoon's expert testimony is **DENIED.**

An appropriate Order shall issue.